UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

OFFICIAL COMMITTEE OF EQUITY SECURITIES
HOLDERS,

                        Appellant,          Case # 23-CV-6350-FPG

v.                                                     DECISION AND ORDER

INTEGRATED NANO-TECHNOLOGIES, INC., et al.,

                        Appellees.

OFFICIAL COMMITTEE OF EQUITY SECURITIES
HOLDERS,

                        Appellant,          Case # 23-CV-6351-FPG

v.                                                     DECISION AND ORDER

INTEGRATED NANO-TECHNOLOGIES, INC., et al.,

                        Appellees.

These related appeals arise from the Chapter 11 bankruptcy case of debtor Integrated Nano-Technologies, Inc. ("INT"). In June 2023, the Honorable Paul R. Warren, Bankruptcy Judge, dismissed the bankruptcy case due to INT's failure to obtain counsel. *See* Transcript of Proceedings, *In re Integrated Nano-Technologies, LLC*, No. 2-22-20611-PRW (Bankr. W.D.N.Y. 2023), ECF No. 237 at 6-7. As a result, Judge Warren concluded that the Official Committee of Equity Securities Holders ("the Committee") was "automatically dissolved." *Id.* at 9. Judge Warren denied as moot the Committee's application to retain the law firm of McCarter & English, LLP. *Id.* at 10.

In Case No. 23-CV-6350, the Committee appeals the dismissal of the case. No. 23-CV-6350, ECF No. 1. In Case No. 23-CV-6351, it appeals the denial of its application to retain McCarter & English, LLP. No. 23-CV-6351, ECF No. 1. The United States Trustee moves to

dismiss both appeals, arguing that, because the Committee "no longer exists," it "has no capacity to pursue these appeals." No. 23-CV-6350, ECF No. 20 at 5, 8. For the reasons that follow, the Trustee's motions are DENIED.

In a Chapter 11 bankruptcy proceeding, the United States Trustee is mandated to appoint a "committee of creditors holding unsecured claims." 11 U.S.C. § 1102(a)(1). The Trustee may also "appoint additional committees of creditors or of equity security holders as [he] deems appropriate." *Id.* A committee of equity security holders "ordinarily consist[s] of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee." *Id.* § 1102(b)(2).

Because "cases under the [Bankruptcy] Code are designed to function by informed, participatory, and self-interested constituent democracy—the centerpiece of which is the reorganization plan which is voted upon by creditors and equity security holders"—committees play an important "oversight role" and act as the "fiduciary representatives of various creditors and equity security holders." 3 William L. Norton III, *Norton Bankruptcy Law & Practice* 3d § 98:1 (2024). "[T]he committee is entrusted with the responsibility to investigate the debtor, oversee the administration of the case, participate in negotiating the plan of reorganization, and exercise other general supervisory functions." *Id.* The Code treats committees as "parties in interest" who have a right to "raise and [] appear and be heard on *any* issue in a [Chapter 11] case." 11 U.S.C. § 1109(b) (emphasis added).

A committee "is a creature of statute, deriving its powers and duties from bankruptcy law." *Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C.*, 467 F.3d 73, 79 (2d Cir. 2006). "The principal source of a [] committee's powers and duties is 11 U.S.C. § 1103(c)." *Id.* Under that provision, a committee is authorized to investigate "the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the

2

continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2).  A committee may "consult with the trustee or debtor in possession concerning the administration of the case," *id.* § 1103(c)(1), and may "participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan." *Id.* § 1103(c)(3).  The Code also provides a committee with the authority to "perform such other services as are in the interest of those represented." *Id.* § 1103(c)(5).  This "catchall" provision "reflects the broad parameters of a committee's functions," Norton, *supra*, § 98:30, and has been relied upon as the basis for authorizing committee actions that, while not explicitly identified in the statute, are consistent with the committee's purposes and the policies underlying the Code.  *See, e.g.*, *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes* (*In re STN Enters.*), 779 F.2d 901, 904 (2d Cir. 1985) (citing Section 1103(c)(5) as one basis to conclude that a creditors' committee has an "implied, but qualified right . . . to initiate adversary proceedings in the name of the debtor").

However, there is no provision in the Bankruptcy Code identifying when a committee's appointment terminates—or, as some courts have expressed it, when a committee "dissolves." *See Hill v. Akamai Techs., Inc.* (*In re MS55, Inc.*), 477 F.3d 1131, 1137 (10th Cir. 2007) ("Chapter 11 expressly provides for the creation of an unsecured creditors' committee, but is less clear about the dissolution of a committee." (internal citation omitted)); Norton, *supra*, § 98:20.  Faced with this lacuna, some courts have retreated to first principles.  "[C]orporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation." *Off. Comm. of Unsecured Creditors v. Constellation Enters. LLC* (*In re Constellation Enters. LLC*), 587 B.R. 275, 280 (D. Del. 2018) (quoting *Okla. Nat. Gas Co. v.*

3

*Oklahoma*, 273 U.S. 257, 259 (1927)).  A committee is like a private corporation, insofar as it is an "artificial entity created by statute, and it can exist only under the express law of the sovereignty by which it was created."  *Id.*  Some courts have therefore reasoned that the absence of express statutory authorization for the post-dismissal existence of a committee suggests that a committee has no such post-dismissal existence.  In effect, a committee must be deemed to have been "automatically dissolved" upon dismissal.  *See, e.g.*, *Off. Comm. of Unsecured Creditors v. Belgravia Paper Co.* (*In re Great N. Paper, Inc.*), 299 B.R. 1, 5 (D. Me. 2003); *Creditors' Comm. v. Parks Jaggers Aerospace Co.* (*In re Parks Jaggers Aerospace Co.*), 129 B.R. 265, 267 (M.D. Fla. 1991).  "And with [the] dissolution of the committee, its rights also expire," *Akamai*, 477 F.3d at 1137, including the right to appeal.  *See Constellation*, 587 B.R. at 286-87.

Relying on this line of reasoning, the Trustee asserts that the Committee "automatically dissolved" upon the dismissal of INT's case, No. 23-CV-6350, ECF No. 20 at 5, and consequently "has no capacity to pursue these appeals."  *Id.* at 8.  The Committee responds that, as a matter of common sense and fairness, a committee that had opposed the dismissal of the case before the bankruptcy court "should be able to prosecute an appeal of the dismissal order."  No. 23-CV-6350, ECF No. 34 at 6.  The Court concludes that the Committee has the capacity to maintain these appeals.

In doing so, the Court recognizes that it departs from the position taken by a number of lower courts and "leading bankruptcy treatises" on the issue.  No. 23-CV-6350, ECF No. 20 at 5.  But leaving aside that none of these authorities is binding, the apparent consensus is built almost entirely on one case, *Unsecured Creditors Committee of Butler Group, Inc. v. Butler* (*In re Butler*), 94 B.R. 433 (Bankr. N.D. Tex. 1989).[1]  There, a creditors' committee, which had been formed in connection with a Chapter 11 bankruptcy proceeding, had attempted to intervene in a related

---

[1] *See, e.g.*, *Constellation*, 587 B.R. at 282 (citing *Butler*); *Belgravia*, 299 B.R. at 5 (same); *Parks*, 129 B.R. at 267 (same); Norton, *supra*, § 98:20 (same).

4

Chapter 7 bankruptcy proceeding to object to the debtors' discharge. *See Butler*, 94 B.R. at 435. Before it could do so, the Chapter 11 proceedings were dismissed. *Id.* This led the Chapter 7 debtors to argue that the committee could not object to their discharge because the committee "was no longer in existence and had no standing to object to their discharge." *Id.* The bankruptcy court agreed, framing the relevant question in this way: "Does a [c]ommittee [h]ave a [l]ife [p]ost-dismissal?" *Id.* at 436. It reasoned that a committee is "organized pursuant to statute." *Id.* Once a "bankruptcy is dismissed," the Bankruptcy Code "no longer applies," and therefore a committee is treated as having been "automatically dissolved." *Id.* The *Butler* court cited nothing in the Code to support these propositions, believing "there was no reason for the statute or rules to require formal dissolution" because dismissal of a Chapter 11 case plainly implied the revocation of the committee's statutory authorization. *Id.*

In the Court's view, however, the *Butler* court failed to tether its reasoning to the text of the Code itself, which is where the analysis must begin. *See Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 600 (2d Cir. 2021). The relevant question is not whether a committee has "life" post-dismissal, a term that the Code does not employ. Indeed, the Code does not reveal any concern over metaphysical questions regarding the nature or length of a committee's "existence." Rather, the Code speaks of appointments, the powers authorized by appointments, and the termination of appointments. *See* 11 U.S.C. §§ 1102, 1103, 1104, 1105. Framed in these terms, the relevant question is simply whether the Code mandates the automatic termination of a committee's appointment upon dismissal of a Chapter 11 case. An evaluation of the text and structure of the Code leads to the conclusion that there is no rigid rule of automatic termination upon dismissal.

When interpreting a statute, the Court starts, "as always, with the statutory text." *ESL Invs., Inc. v. Sears Holdings Corp.* (*In re Sears Holdings Corp.*), 51 F.4th 53, 62 (2d Cir. 2022) (internal

quotation marks omitted). That text is examined "in light of context, structure, and related statutory provisions." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005).

Subchapter I of Chapter 11 of the Bankruptcy Code authorizes the appointment of several different actors in connection with a Chapter 11 case. Section 1102(a)(1) mandates the appointment of an unsecured creditors' committee and authorizes the appointment of "additional committees of creditors or of equity security holders." 11 U.S.C. § 1102(a)(1). Section 1103 sets forth the powers and duties of appointed committees. Section 1104 authorizes the appointment of trustees and examiners. Notably, Subchapter I only expressly regulates the termination of a trustee's appointment so as to "restore the debtor to possession and management of the [estate]," *id.* § 1105; it does not expressly set forth any other circumstances under which these appointments terminate. Nor does the Code mention appointments or their termination in the statute addressing the effect of dismissal in a bankruptcy case. *See id.* § 349. By contrast, the Code expressly terminates the appointments of trustees and examiners upon conversion. *See id.* § 348(e).

As these provisions show, Congress clearly considered the issue of appointment termination in some detail, and Congress expressly regulated it when it chose to do so. The fact that it omitted a rigid rule of automatic termination of committee appointments upon dismissal suggests that it did not intend to impose such a rule. *See Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 181 (2d Cir. 2014) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling."). Conversely, it is implausible that, having addressed appointment terminations in several contexts, Congress would decide to purposefully omit an

6

automatic-termination rule for committees on the ground that such a rule was so obviously implied from the operation of the statute, as the *Butler* court claimed. *Butler*, 94 B.R. at 436.

The better inference is that Congress did not call for the automatic termination of a committee's appointment upon dismissal because it was unnecessary to do so; the Code already sufficiently limits the scope of committees' activities. As a "creature of statute" with a defined set of powers—principally set forth in 11 U.S.C. § 1103(c)—committees' activities are inherently limited in time and manner. *Worldcom*, 467 F.3d at 79-80. Committees may consult with the trustee and debtor concerning case administration, investigate the debtor's financial condition, assist in formulating a plan, and perform other services in the interest of those they represent. Because these powers must of necessity be exercised in connection with a bankruptcy proceeding, there is little risk that a committee can operate at a time or in a manner far removed from the Chapter 11 case. *See id.* at 80 (noting that "courts have construed [] committees' authority narrowly" when they "have attempted to act entirely outside the bankruptcy proceedings"). To be sure, this means that the Code identifies no precise point at which a committee's appointment can be said to be terminated. But the fact that committees' authority may be somewhat open-ended is not surprising, as the Code grants committees a "robust and flexible role" in Chapter 11 bankruptcy proceedings, *Off. Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 566 (3d Cir. 2003), which corresponds to the overarching "policies of flexibility and equity built into Chapter 11 of the Bankruptcy Code." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 525 (1984).

Courts have recognized this need for flexibility in the related context of a committee's post-confirmation activities. As with post-dismissal activities, the Code does not expressly permit a committee to engage in any activities after the confirmation of a plan. Unlike post-dismissal activities, however, several courts have recognized that the Code does not *preclude* post-

7

confirmation activities either. Nothing in the Code "specifically requir[es] that the duties of a [] committee cease with the confirmation of a plan." *In re Diversified Cap. Corp.*, 89 B.R. 826, 830 (Bankr. C.D. Cal. 1988). In the absence of such a prohibition, courts analyze whether the post-confirmation activity is consistent with the committee's statutory powers. Some responsibilities set forth in Section 1103(c) "clearly can apply to duties and responsibilities after confirmation," including a committee's power to investigate matters relating to the case and perform other services on behalf of its constituents. *Id.* Because "[t]here may be services in the interest of [its constituents] that are necessary or appropriate after confirmation of the plan"—for example, "the litigation of claims . . . that are not yet resolved at the time of confirmation"—Section 1103(c) authorizes committees to act "after the confirmation of a Chapter 11 plan." *Id.* at 830-31; *see also In re Drs. Hosp. of Tampa, Ltd.*, 183 B.R. 312, 314 (Bankr. M.D. Fla. 1995) ("[T]here appears to be duties and responsibilities of a committee under 11 U.S.C. § 1103(c)(2) and (5) [that] suggest post confirmation activities of a committee appointed under 11 U.S.C. § 1102."); *Equity Sec. Holders' Comm. v. Wedgestone Fin.* (*In re Wedgestone Fin.*), 152 B.R. 786, 787-88 (Bankr. D. Mass. 1993) (concluding that a committee had the power to commence an adversary proceeding after confirmation pursuant to Section 1103(c)); *Parks*, 129 B.R. at 267 (noting that, in some situations, "a creditors' committee needs to exist after confirmation to ensure the debtor fulfills its obligations under the plan").

    This functional approach better accords with the text and policies of the Code than an approach based on general corporate-law principles. And, insofar as the Code does not distinguish between post-confirmation and post-dismissal activities, *see* 11 U.S.C. § 1103(c), a similar analysis ought to apply in the latter context as much as the former. Accordingly, the Court will proceed to determine whether the Committee's appeals are consistent with the powers granted to it under the Code. The Court concludes that they are.

Under Section 1103(c)(5), a committee is authorized to "perform such other services as are in the interest of those represented." 11 U.S.C. § 1103(c)(5). Under Section 1109(b), a committee is designated a party in interest that "may raise and may appear and be heard on any issue in [the Chapter 11] case," *id.* § 1109(b), including a motion to dismiss. *See id.* § 1112(b)(1). Given a committee's indisputable interest in the issue of dismissal, it follows that a committee would have a similar interest in appealing what it perceives to be an erroneous dismissal order. A committee is just as much a "watchdog" on behalf of its constituents when it opposes a flawed motion to dismiss in the bankruptcy court as when it later seeks to appeal the erroneous dismissal order to the district court. *Advisory Comm. of Major Funding Corp. v. Sommers* (*In re Advisory Comm. of Major Funding Corp.*), 109 F.3d 219, 224 (5th Cir. 1997). Furthermore, the Trustee does not dispute that, in this case, the Committee has been "directly and adversely affected pecuniarily" by the challenged orders so as to have standing to appeal. *O'Brien v. Vermont* (*In re O'Brien*), 184 F.3d 140, 142 (2d Cir. 1999) ("[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be a 'person aggrieved'—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." (internal quotation marks omitted)); *see also* No. 23-CV-6350, ECF Nos. 20, 38.

Given the Committee's interest in prosecuting these appeals on behalf of those it represents, and the broad statutory authorization of Section 1103(c)(5), the Court concludes that the Committee has the capacity to pursue these appeals. Consequently, the Trustee's motions to dismiss (No. 23-CV-6350, No. 20; No. 23-CV-6351, No. 20) are DENIED. The Trustee's merits briefs are due by March 27, 2024. The Committee's replies are due by April 10, 2024.

IT IS SO ORDERED.

Dated: March 5, 2024
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York